UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____-

UNITED STATES OF AMERICA

v.                                                                           Case No. 23-CR-0078-RJA

ANTHONY V. GIAMBRONE,

               Defendant.
_____

# DEFENDANT ANTHONY V. GIAMBRONE'S SENTENCING MEMORANDUM

Dated: Buffalo, New York
       December 16, 2024.

                                  /s/Brian M. Melber
                                  Brian M. Melber, Esq.
                                  PERSONIUS MELBER LLP
                                  *Attorneys for Defendant*
                                  ANTHONY V. GIAMBRONE
                                  2100 Main Place Tower
                                  Buffalo, NY  14202
                                  (716)  855-1050
                                  bmm@personiusmelber.com

## TABLE OF CONTENTS

| | |
|---|---|
| **INTRODUCTION** | **page 3** |
| **PLEA AGREEMENT AND ADVISORY RANGE** | **page 4** |
| **HISTORY AND CHARACTERISTICS OF THE DEFENDANT** | **page 5** |
|     **A. Remorse for Harm Caused by the Offense** | **page 5** |
|     **B. Service to Family – the rock** | **page 6** |
|     **C. Counseling and Rehabilitation** | **page 7** |
| **NATURE AND CIRCUMSTANCES OF THE OFFENSE** | **page 9** |
| **THE "FUNDAMENTALLY DIFFERENT" CHARACTER OF THE CHILD PORNOGRAPHY GUIDELINES** | **page 10** |
| **MITIGATION** | **page 14** |
| **FEES AND RESTITUTION** | **page 15** |
| **CONCLUSION** | **page 17** |

## INTRODUCTION

This Sentencing Memorandum is submitted on behalf of defendant Anthony V. Giambrone and sets forth the factors which the defense will ask this Court to consider in sentencing him. Mr. Giambrone is scheduled to be sentenced at 11:00 am on December 19, 2024.

At sentencing, the defense will ask this Court to consider a non-Guidelines sentence which is sufficient, but not greater than necessary, to address the purposes of sentencing. A Notice of Motion seeking a downward variance from the applicable Guidelines range. The seriousness of the conduct in this case notwithstanding, it is respectfully suggested that the imposition of a term of incarceration of 6-1/2 to 8 years would be unduly harsh, would not fairly serve the purposes of sentencing outlined in 18 U.S.C. §3553(a), and would otherwise be substantively unreasonable in light of the shortcomings of the child pornography Guidelines as identified by the Second Circuit in *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010).

Factors that support the imposition of a non-Guidelines sentence include Mr. Giambrone's profound regret and remorse for his conduct, his extensive efforts to rehabilitate himself through counseling, his deep and supportive family network that will help him continue that rehabilitation after release under supervision, and the nature and circumstances of the offense which although undeniably serious, are nonetheless characterized by mitigating facts.

The defense respectfully requests that the Court consider imposing a term of imprisonment of not more than 36 months, along with reasonable restitution, and treatment which Mr. Giambrone eagerly seeks.

## THE PLEA AGREEMENT AND
## ADVISORY GUIDELINES RANGE

Anthony Giambrone pled guilty to one count of Possession of Child Pornography involving a prepubescent minor in violation of 18 U.S.C. §2252A(a)(5)(B). In summary, he admitted that he knowingly possessed child pornography by computer. When Mr. Giambrone appeared before the Court and entered his plea, he fully and formally acknowledged his wrongdoing, accepted the consequences of his conduct, and took further step to accept responsibility and move toward rehabilitation. Mr. Giambrone was cooperative with the law enforcement agents and readily admitted his offense in Court. He immediately pursued counseling to help understand his conduct and to avoid any repetition in the future.

Pursuant to the Plea Agreement, the government and the defendant agreed that Guideline §2G2.2(a)(1) applies to the offence of conviction, providing for a base level of 18. PSR ¶54. The government and defendant also agree that the following specific offense characteristics apply: a two level increase pursuant to Guideline §2G2.2(b)(2) [material involved a prepubescent minor or a minor under the age of 12 years], a four level increase pursuant to Guideline §2G2.2(b)(4) [material that portrays . . . the exploitation of an infant or toddler], a two level increase pursuant Guideline §2G2.2(b)(6) [use of a computer], and a five level increase pursuant to Guideline §2G2.2(b)(7)(D) [600 or more images]. PSR ¶¶ 55-58. Based on those enhancements, Mr. Giambrone's adjusted offense level is 31. The government does not oppose two level downward adjustments of Guidelines §3E1.1(a) [acceptance of responsibility] and will move the Court to apply the additional one level downward adjustment of Guideline §3E1.1(b). Mr. Giambrone's total offense level is therefore 28. PSR ¶¶ 64-66. He has no criminal history. With a CHC of I, this results in an advisory sentencing range of imprisonment of 78 to 97 months and a period of supervised release of 5 years to life. PSR ¶¶ 76, 79.

While the government and the defense agreed to the Guideline calculations set forth in the Plea Agreement, and the same calculations are recommended in the PSR, the defendant reserved his right to seek a sentence outside the Sentencing Guidelines range.

## HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Mr. Giambrone is 41 years old. His mother, Barbara, and his father, Victor, were married until Barbara's death. Victor now lives in Clarence with his wife, Maria. His family of origin includes his two siblings, Christina and Peter, and Maria's two adult children. It's a tight-knit Italian-American Catholic family. All the family members live in Western New York. Mr. Giambrone is married to Jerrod Baldwin and they have a young daughter, Abigail Baldwin-Giambrone. Mr. Giambrone was a primary care provider and parent to Abigail. Both she and Jerrod have struggled with Anthony's absence since he was detained.

Anthony has written statements about his remorse and rehabilitation which are attached as **Exhibits A and B**. His family and friends have written letters of support which are attached as **Exhibits C through M**. Records of counseling, education and other programs during his detention are attached as **Exhibit N**. Photos of Anthony and his daughter Abigail are attached as **Exhibit O**.

While recognizing the grave nature of Mr. Giambrone's offense, his family members nevertheless know him as a gentle, generous, and hardworking man of service within the family. He is the rock in this tight-knit family unit.

**A. Anthony Giambrone's deep remorse for the harm caused by his offense**

Attached to this memorandum as **Exhibit A** is Anthony's unedited statement in his own hand expressing his profound regret and shame for the offence he committed. In this statement he

5

makes clear that he understands the harm that even passive viewing of child pornography causes to children because it relates back to the production of those images. "I understand that even viewing these kinds of images leads to the victimization of children with the production of these images and for this I feel absolutely awful." Anthony further expresses regret for the impact as crime has had on others, especially his loved ones. "My actions have negatively affected many people in my life, in the community in which I live, and also in many other people's lives and for this I am extremely ashamed of my decisions. I am very sorry for the immediate burden I have placed on my family, especially my husband, Jerrod, and our five year old daughter Abigail." Anthony's father writes "Do I feel Anthony is sorry for what he did, yes! We talk about this all the time. He knows he did terrible thing and want to fix it." **Exhibit C**.

### B. Service to Family – the "rock"

Throughout his life, Anthony demonstrated an extreme commitment to service and duty within his family. His father calls him his rock. That's an unusual position for a son to be in relation to his father. Anthony's father wrote "During my whole life with Anthony, he was always by my side. Working with me around the house, shopping, whatever he was there to enjoy. I leaned on Anthony my whole life to be the example for his brother and sister. When I went on business trips, I would always talk to him to remind him of his responsibilities, Anthony never let me down." **Exhibit C**, p. 2. This letter from Anthony's father is full of effusive praise of Anthony for being a devoted and dutiful son, never letting the family down. Anthony's father writes about how after the death of Anthony's mother, Anthony would come home every weekend to help with his younger siblings. "He would always check on me and his siblings. Anthony would call his sister Christina at college to check on her. They had many long talks. Anthony would calm me down

most of the time. With the help of Anthony, we all became closer and stronger." Anthony's cousin Gina Gerber writes about Anthony's incredible devotion to his mother and support of his father and siblings during her final illness. "When his mother was diagnosed with cancer in the 2000's, he spent hours by her side, cooking meals for her, fixing special treats during chemo, and providing emotional support and encouragement to her, his father and his siblings. He travelled back and forth from his job, friends and home in Buffalo several times a week to make sure that his mother had everything she needed to courageously fight the cancer that ultimately took her life in 2009. I still remember walking into my aunt's hospital room during the last week of her life and watching Anthony massage his mother's feet to provide some relief from the discomfort she was facing. He stood by his father's side and supported his siblings during a horrible time after his mother's passing and did so with both resiliency and compassion."

What is missing from these narratives is who supported Anthony, who helped him cope with his mother's illness and death or who Anthony leaned on when his father leaned on him. Anthony's devotion and service to his family is admirable but so extreme that it seems to have come at a dire cost to his own mental and emotional health and well-being. He suppressed his own emotional needs and the neglected his well-being to serve others.

**C. Counseling and Rehabilitation**

In 2010, the year after his mother's death, Anthony was diagnosed with major depression. He has been prescribed Lexapro during his detention at the Cattaraugus County jail. PSR ¶97. He treated periodically with a counselor between 2010 and 2020. He was diagnosed with major depressive disorder, generalized anxiety disorder, and relationship distress. PSR ¶98. After his computer was seized in 2020 Anthony was referred by his longtime counselor to "a different

7

provider for more specialized treatment." PSR ¶98. That specialized provider was Carrie Rich, a counselor with a background in counseling people with sexual issues caused by trauma. **Exhibit A**, p. 3. After charges were filed, Anthony also treated with Endeavor Health. PSR ¶99. Those records reflect Anthony experienced suicidal ideation as a teenager. Anthony reports he was bullied in school.

Anthony is working hard through counseling to address his mental and emotional issues which seem to be related to his addiction to pornography. Anthony writes "I regret my decisions and have personally worked very hard to get to the root of why this happened, so I can lead a very healthy, happy, and successful life and going forward be the best person, husband, and father that I can be." **Exhibit A**. During his detention, he has been pursuing treatment and education to address his underlying problems. "I can lead a life free of addiction to pornography by using the coping skills learned through counseling and reading self help sources and that I have my husband, family, and friends that are all aware of my past struggles who are here for me to turn to so I never need that negative coping again."

The family and friends who have written in support of Anthony confirm he will have a close and supportive network of family and friends. The family members who leaned on him throughout his life will have the opportunity to return that support. Anthony's father writes "Anthony has been working with counselors from day one, when he first got caught four years ago. Now in jail, he continues with counselors and got even closer to God more than ever. Talking with pastor at the jail constantly. When Anthony does get released from jail, we all know about his feelings now and ALL OF THE FAMILY & FRIENDS ARE GOING TO SUPPORT HIM & HELP HIM RECOVER. HE WILL BE WATCHED ALL THE TIME BY THE ONES THAT LOVE HIM." **Exhibit C**, p. 3 (all as in original, including capitalization). Anthony's friend Amy

8

Martin writes "I also want to emphasize the strong support system that Anthony will have once he serves his time. I know that I will be there to ensure Anthony never feels the need to allow his addiction to take over his life again. He knows now that he will have a friend in me, free of judgment, to confide in and help him going forward. Anthony has been in treatment for four years and understands the wrongness of his actions. He has learned how to manage his addiction and emotions, which will be crucial in his path to rehabilitation. **Exhibit I**.

Anthony's programs and treatment in detention, as well as his engagement with his Catholic faith are documented in the letters of his chaplain and counselor at the Cattaraugus County Jail (**Exhibits M and N**), and the certificates of his program completions (**Exhibit N**). His motivation to live a healthy, lawful life free from this offensive conduct will start with his daughter. Photos of Anthony and Abigail are attached as **Exhibit O**.

## NATURE AND CIRCUMSTANCES OF THE OFFENSE

The evidence reveals that the unlawful conduct of Mr. Giambrone forming the basis for his conviction of one count of possession of child pornography focusses upon the files obtained from his electronic devices. Because these devices were searched, it is important to note that there is no information or evidence to suggest Mr. Giambrone was ever involved in the production of these images. There is no indication he shared, forwarded, or distributed any contraband images. And certainly, there is no suggestion he ever endeavored or was even interested in any unlawful or inappropriate contact or communication with any child. Rather, as described in paragraph 33 of the PSR, he was not directly responsible for the victimization of the children depicted in the images. However, it is acknowledged that Mr. Giambrone's participation in the receipt and

possession of this material makes him indirectly responsible for the continued victimization of the children depicted in the files.

## THE "FUNDAMENTALLY DIFFERENT" CHARACTER
## OF THE CHILD PORNOGRPAHY GUIDELINES

A sentencing court is not required to follow the Guidelines when imposing an appropriate sentence. The Guidelines are generally "considered" by any judge with 18 U.S.C. §3553(a) factors in fashioning a sentence that is procedurally and substantially reasonable. *United States v. Crosby*, 397 F3d 103, 110-112 (2d Cir., 2005); *United States v. Booker*, 543 US 220 (2005).

The Guidelines are not mandatory nor are they presumed reasonable. *Gall v. United States*, 552 US 38 (2007). The Court should generally make an individualized assessment based upon the facts presented to it in making the determination in what the Court believes is a reasonable sentence. We understand that this Cout is now cognizant of all the circumstances which the Court will ultimately consider when imposing a sentence pursuant 18 U.S.C. §3553(a). The statute explicitly states that, "the Court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of the subsection." 18 U.S.C. §3553(a).

The Second Circuit, in *United States v. Dorvee*, raised concerns about the child pornography Guidelines that are relevant here. *See* 616 F.3d 174, 184 (2d Cir. 2010). The defendant in *Dorvee* pled guilty to distribution of child pornography and was sentenced to 240-months. Id. at 176. When reviewing the District Court's Guidelines calculation, the Second Circuit held that the Court failed to correctly apply the guidelines. *Id*. at 181. The Dorvee Court found that the District Court's errors were exacerbated by:

> …[T]he fact that the district court was working with a Guideline that is fundamentally different from most and that, unless applied with great care, can lead to unreasonable sentences that are inconsistent

10

>with what §3553 requires. Sentencing Guidelines are typically developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices. (Citation omitted). However, the Commission did not use this empirical approach in formulating the Guidelines for child pornography. Instead, at the direction of Congress, the Sentencing Commission has amended the Guidelines under § 2G2.2 several times since their introduction in 1987, each time recommending harsher penalties. Id. at 184.

The Court explained that Congress advocated for the child pornography Guidelines without consulting the Sentencing Guideline Commission and ignored the statutorily prescribed process for creating the Guideline Amendments. *Id*. at 185. The Court in *Dorvee* determined the §2G2.2 enhancements "cobbled together through this process routinely result in Guideline projections near or exceeding the statutory maximum even in run-of-the-mill cases." *Id*. at 186.

The Court noted that defendants in child porn cases, sentenced within the Guideline calculations, often receive sentences greater than individuals who have sexually offended children or adults. *Id*. at 184. The Court added that ordinary first-time offenders are likely to qualify for sentences approaching the statutory maximum in a given case. The Court explained:

>Consequently, adherence to the Guidelines results in virtually no distinction between the sentences for defendants like Dorvee, and the sentences for the most dangerous offenders who, for example, distribute child pornography for pecuniary gain and who fall in higher criminal history categories. This result is fundamentally incompatible with §3553(a). By concentrating all offenders at or near the statutory maximum, § 2G2.2 eviscerates the fundamental statutory requirement in §3553(a) that district courts consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and violates the principle, reinforced in *Gall,* that courts must guard against unwarranted similarities among sentences for defendants who have been found guilty of dissimilar conduct. *Id*. at 187.

The Court concluded by suggesting that sentencing courts are "encouraged to take seriously the broad discretion they possess in fashioning sentences under §2G2.2 – ones that can

11

range from non-custodial sentences to the statutory maximum – bearing in mind that they are dealing with an eccentric Guideline of highly unusual providence which, unless carefully applied, can easily generate unreasonable results." *Id*. at 188.

In *United States v. Tutty*, the Second Circuit explicitly stated a District Court can factor in policy considerations when sentencing a defendant, like the Second Circuit did in *Dorvee*. See 612 F.3d 128, 133 (2d Cir. 2010). In that case, the defendant, who had no prior criminal history, was cooperative and remorseful, and there was no evidence he ever had sexual contact with a child. *Id*. at 129. His offense level was adjusted upward for possession of images of children under the age of twelve, for use of a computer, for the number of images possessed, and for possession of images that portrayed sadistic, masochistic, or violent material. *Id*. at 129-130. The defendant also received a downward adjustment for acceptance of responsibility. *Id*. Arguing for a downward departure, the defendant urged the court to consider the harsh nature of the child pornography sentencing enhancements. *Id*. But the District Court stated it did not have the authority to depart from the Guidelines based on policy grounds, sentencing the defendant to the bottom of the Guidelines range: 168 months. *Id*.

On appeal, the Second Circuit determined the District Court committed procedural error by concluding it could not consider a broad, policy-based argument against the child pornography Guidelines. The Second Circuit noted the *Dorvee* decision, explaining the Sentencing Commission did not use the empirical approach to formulate the child pornography Guidelines, and instead Congress enacted and repeatedly mandated amendments that progressively increased penalties. The Second Circuit also called attention to the fact that a series of enhancements apply in virtually every case, resulting in Guideline ranges that are usually near or above the statutory maximum, even in run of the mill cases. For example, the Court noted that three of the five enhancements that

applied to the Defendant in the case before it also applied to the overwhelming majority of defendants. The frequency of these calculation results in no distinction between the sentences for an ordinary first-time offender and the sentences for the most dangerous offenders who, for example, distribute child pornography for pecuniary gain. After noting the issues with the child pornography sentencing guidelines, the Second Circuit remanded the case for reconsideration, bearing in mind the facts set forth in the decision urging caution about the child pornography sentencing guidelines.

The sentiment in these two 2010 Second Circuit cases continues today. In June 2021, the United States Sentencing Commission published the <u>Federal Sentencing of Child Pornography Non-Production Offenses</u> that updated and expanded upon the Sentencing Commission's 2012 Child Pornography Report to Congress. One of the reasons the Commission was prompted to do so: there had been a steady increase in the percentage of sentences imposed below the applicable guideline range in non-production child pornography cases. The Sentencing Commission stated this indicates that courts increasingly believed the sentencing scheme for such offenders was overly severe.

The Commission reasoned that advancements in technology caused enhancements that were only intended to apply to the most serious child pornography offenses were instead routinely applied to most non-production child porn offenses. Four of the six enhancements, that account for a combined 13 offense levels, cover conduct that they now apply in the vast majority of cases sentenced under §2G2.2. For example, in the fiscal year 2019, more than 95% of non-production child pornography offenders received enhancements for the use of a computer. In the fiscal year 2022, that percentage increased to 96.6%.

## MITIGATION

We acknowledge the seriousness of the offending conduct of Mr. Giambrone, which included possession of more than 200,000 images of child pornography, some of which depicted sadistic or masochistic conduct. We do not dispute that, in identifying a sentence which is sufficient, but not greater than necessary, to meet the purposes of federal sentencing, a period of incarceration, in addition to the fourteen (14) months already served in local custody, is warranted. In determining, however, the length of the required jail term, one that is sufficient but not greater than necessary, we respectfully request that the following factors in mitigation be given weighty consideration:

1. Mr. Giambrone's cooperation in the investigation and prosecution of this matter.

2. Mr. Giambrone's lack of criminal history.

3. Mr. Giambrone's receptiveness to counseling from a mental health perspective and interest in participating in sex offender counseling in the future.

4. The absence of any evidence that Mr. Giambrone engaged in any other illegal conduct involving child pornography.

5. The absence of evidence Mr. Giambrone distributed or ever intended to distribute any of the pornography of which he possessed.

6. The fact that Mr. Giambrone has otherwise been an asset to the community and a selfless "rock" to his family, putting service to his parents, siblings, and daughter above all including his own well-being.

7. Mr. Giambrone's profound remorse for his actions and categorical acceptance of responsibility.

8. His demonstrated commitment to his own rehabilitation through mental health counseling.

9. The stated commitment of his family and friends to support and assist him in his continued rehabilitation under supervise release.

When the crime involves child crimes and sexual offenses, the Court must impose a sentence of the kind and within the range referred to in 18 U.S.C. 3553(a)(4) unless the Court finds aggravating or mitigating circumstances. To depart from the sentence range, the mitigating circumstance must (1) be affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements under 28 U.S.C. §994(a), (2) has not been taken into consideration by the Sentencing Commission when formulating the guidelines, and (3) should result in a sentence different than the Sentencing Guidelines describe.

Mr. Giambrone has no prior criminal history. He has made substantial efforts to improve his mental health. Prior to the filing of the charges, he was cooperative with the execution of the search warrant. He promptly retained counsel and continued his cooperation in this process. For the next several years, Mr. Giambrone was aware the Government was undertaking a search of his electronic devices, and that he could anticipate the filing of the current charges, which ultimately came in July 2023. At this time, it has been more than four years since this matter has been pending as an investigation or prosecution. Mr. Giambrone has cooperated and participated in every way at every stage and has taken responsibility for his conduct by entering into a plea agreement.

## FEES AND RESTITUTION

The PSR, at paragraphs 82 through 88, addresses the financial obligations of Mr. Giambrone under the circumstances of this case. It is not disputed that a payment of $5,000 is due pursuant 18 U.S.C. §3014. PSR ¶83. Pursuant to 18 U.S.C. §2259A(a)(1), a further assessment of

"not more than" $17,000 is identified. PSR ¶84. No minimum assessment amount is stated. Instead, §2259A(c) directs that consideration be given to the factors set forth in 18 U.S.C. §3553(a) and §3572 in determining the amount of this assessment. We interpret the reference to §3572 as vesting the Court with discretion regarding this assessment as the language of §3572(a) refers to considering a defendant's income, earning capacity, and financial resources "[i]n determining whether to impose a fine[.]" (Underlining added for emphasis.)

While paragraph 84 of the PSR also refers to subdivisions (a)(2) and (a)(3) of §2259A, which provide for separate assessments in the case of child pornography trafficking and production offenses, those provisions are inapplicable in this instance. Mr. Giambrone's count of conviction solely pertains to possession of child pornography.

Finally, consideration must be given to the restitution provisions of 18 U.S.C. §2259. Subdivision (b)(2)(B) of the statute requires a restitution payment of "no less than $3,000" per victim. The Government's Memorandum in Support of Victim Restitution (Doc. 40) sets forth 4 separate requests for restitution. The table below addresses lists each of those requests:

| VICTIM | RESTITUTION REQUEST |
|---|---|
| "Pia" Sweet White Sugar Series | $5,000 |
| "Jessy" Surfer Hair Series | $5,000 |
| "Sloan" Tara Series | $10,000 |
| "SV" Sparklin Velvet | $5,000 |
| total | $25,000 |

The statutory minimum award for each victim would be $3,000 however, for a total restitution award of $12,000. It is respectfully suggested an award of no more than $12,000 is appropriate in the absence of, at a minimum, evidentiary proof of the actual losses of the victims, on which the Government bears the burden of proof. In addition, the amount of loss demonstrated by actual

proof must be compared to the actual recovery in each instance in order to avoid any recovery in excess of that total loss. The Government's memorandum does not attach or proffer proof of actual total loss, except in summary fashion.

## CONCLUSION

For the foregoing reasons it is respectfully requested that the Court consider imposing a non-guideline sentence, issuing a downward variance from the otherwise applicable guideline sentencing range and sentence Mr. Giambrone as follows: to a period of imprisonment of not more than 36 months, with a recommendation he be required to participate in one of the Bureau of Prison's sex offender treatment programs, and that he receive mental health counseling; to the payment of assessments and restitution; and, to a Supervised Release term for a period he Court determines to be just and reasonable. Such a sentence is sufficient but not greater than necessary to satisfy all of the imperatives of sentencing in this case.

Dated: Buffalo, New York
December 16, 2024

**/s/ Brian Melber**
Brian M. Melber, Esq.
PERSONIUS MELBER LLP
Attorneys for Defendant
ANTHONY V. GIAMBRONE
2100 Main Place Tower
Buffalo, NY 14202
(716) 855-1050
bmm@personiusmelber.com

TO:   AUSA Aaron J. Mango, Esq.
U.S. Attorney's Office
Federal Centre
138 Delaware Avenue
Buffalo, NY 14202
(716) 843-5864
Aaron.mango@usdoj.gov